1  BRADLEY S. PHILLIPS (SBN 85263)
   brad.phillips@mto.com
2  MUNGER, TOLLES & OLSON LLP
   355 South Grand Avenue, 35th Floor
3  Los Angeles, California 90071-1560
   Telephone:   (213) 683-9100
4  Facsimile:   (213) 687-3702

5  MARK D. ROSENBAUM (SBN 59940)
   mrosenbaum@publiccounsel.org
6  GARY BLASI (SBN 70190)
   gblasi@publiccounsel.org
7  CHRISTINA GIORGIO (SBN 203061)
   cgiorgio@publiccounsel.org
8  ALISA HARTZ (SBN 285141)
   ahartz@publiccounsel.org
9  AZADEH M. HOSSEINIAN (SBN 306141)
   ahosseinian@publiccounsel.org
10 PUBLIC COUNSEL LAW CENTER
   610 S. Ardmore Avenue
11 Los Angeles, California 90005
   Telephone:   (213) 385-2977
12 Facsimile:   (213) 385-9089

13 JOHN B. MAJOR (SBN 306416)
   john.major@mto.com
14 MUNGER, TOLLES & OLSON LLP
   560 Mission Street, 27th Floor
15 San Francisco, California 94105-2907
   Telephone:   (415) 512-4000
16 Facsimile:   (415) 512-4077

17 Attorneys for Plaintiffs

18              UNITED STATES DISTRICT COURT

19      CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

20

21 KELLY ANN ALLEN, ROBERT          | Case No. 16-cv-01859
   BELL, JR., SETH CROY, VERONICA   |
22 DELGADO, JANE DOE,* JAMES        | CLASS ACTION
   MORGAN, CARMEN NUNEZ,            |
23 STEVEN WAYNE O'DONNELL,          | COMPLAINT: CIVIL RIGHTS
   ROBERT RICO, JOHN ROE,           | 42 U.S.C. § 1983
24 TOMMY SINGLETON, JAMES           |
   SPRY, KELLEY WILCOX, JULIE       | UNITED STATES CONSTITUTION,
25 WILLIAMS, & NORTH TOWNE          | FOURTH, FIFTH & FOURTEENTH
   CHRISTIAN CHURCH,                | AMENDMENTS
26

27 _____

   * Two Plaintiffs, Jane Doe and John Roe, are referred to under pseudonyms to
28 protect their privacy.

                            COMPLAINT

1          Plaintiffs,              **CALIFORNIA CONSTITUTION**
                                    **ARTICLE I, §§ 7, 13 & 17**
2      vs.
                                    **CALIFORNIA CIVIL CODE §§ 52,**
3  CITY OF POMONA,                  **52.1 & 2080**

4          Defendant.               **CONVERSION**

5                                   **TRESPASS TO CHATTELS**

6                                   **DEMAND FOR JURY TRIAL**

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT

Plaintiffs Kelly Ann Allen, Robert Bell, Jr., Seth Croy, Veronica Delgado, Jane Doe, James Morgan, Carmen Nunez, Steven Wayne O'Donnell, Robert Rico, John Roe, Tommy Singleton, James Spry, Kelley Wilcox, and Julie Williams ("Plaintiffs"), on behalf of themselves and all others similarly situated, along with North Towne Christian Church, bring this action against the City of Pomona ("the City" or "Defendant").

## INTRODUCTION

1.      This lawsuit challenges the City's policy and practice of seizing and destroying homeless persons' property, without notice and over the objections of the property owner.  By undertaking this practice, the City has permanently deprived Plaintiffs of many of their most essential belongings, including Electronic Benefits Transfer ("EBT") cards, which contain food stamps and General Relief funds; medication to control active symptoms of Human Immunodeficiency Virus ("HIV"), high blood pressure, and other serious medical conditions; tents, tarps, and blankets; state-issued identification cards, birth certificates, and Social Security cards; precious photographs of family members; and even, in two cases, the ashes of deceased parents.

2.      By confiscating and destroying the property of homeless people, the City leaves an already vulnerable group in grave and immediate danger.  The City deprives homeless individuals of the few precious and critical possessions they own and forces them to live for days or weeks after the confiscations without medication, tents, sufficient food, and essential hygiene items.  The City's practice has exposed Plaintiffs to cold nights, hunger, increased pain and suffering, severe mental distress, and loss of dignity.  After each confiscation, a homeless person must expend her miniscule income and her emotional resources, which are already taxed by life on the streets, on getting back to where she was before the City took and destroyed her property.  Far from assisting homeless individuals in escaping the

1  cycle of homelessness, the City all but guarantees a vicious circle that can only be
2  broken against the steepest of odds.

3          3.      The possessions being seized pose no health or safety risks to the
4  community.  On information and belief, the confiscations appear to be part of a
5  deliberate strategy to expel homeless residents from Pomona, given their frequency,
6  the nature of the items seized, and the openness and hostility with which they are
7  conducted.

8          4.      This practice is not only inhumane and bad social policy; it is also a
9  blatant violation of Plaintiffs' well-established constitutional and statutory rights.  In
10 *Lavan v. City of Los Angeles*, 693 F.3d 1022, 1033 (9th Cir. 2012), the Ninth Circuit
11 made clear that the government may not "seize and destroy with impunity the
12 worldly possessions of a vulnerable group in our society."  The City's policy and
13 practice of noticeless seizure and destruction of property leads to just that result.
14 Plaintiffs here sue on behalf of themselves and all similarly situated homeless
15 residents of the City of Pomona.  They ask the Court to stop the City from
16 confiscating and destroying their property and to force the City to treat their
17 property with the respect that the Constitution and laws of California require.  "If
18 the constitutional conception of 'equal protection of the laws' means anything, it
19 must at the very least mean that a bare . . . desire to harm a politically unpopular
20 group cannot constitute a legitimate governmental interest."  *U. S. Dep't of Agric. v.*
21 *Moreno*, 413 U.S. 528, 534 (1973).

22                            **JURISDICTION**

23         5.      This Court has subject matter jurisdiction over this case pursuant to
24 28 U.S.C. §§ 1331 and 1343 because it arises under the Constitution and laws of the
25 United States and because it is brought pursuant to 42 U.S.C. § 1983.  The Court has
26 supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C.
27 § 1367.

28

## VENUE AND INTRADISTRICT ASSIGNMENT

6.      Venue is proper in the Central District because all of the events and conduct complained of in this action occurred in the Central District.  28 U.S.C. § 1391(b)(2).

7.      This lawsuit should be assigned to the Western Division of this Court because the events and conduct complained of in this action occurred in Los Angeles County, all Plaintiffs reside or are located in Los Angeles County, and Defendant City of Pomona is located in Los Angeles County.

## PARTIES

Plaintiffs:

8.      Plaintiffs are fourteen homeless individuals living in the City of Pomona who have had their personal possessions confiscated and destroyed by City employees.  Plaintiffs seek to represent a class of similarly situated homeless individuals who have suffered and will continue to suffer the same type of loss as a result of the same unlawful practice and policy.

9.      Plaintiff Kelly Ann Allen is a homeless resident of the City of Pomona.  She has had her property seized and destroyed by Pomona police officers and Code Enforcement officials on three separate occasions, without notice and without the opportunity to retrieve her possessions.  On all three occasions, she was with her property and protested in vain that police not take her things.  On at least one occasion, she was told that she would be arrested and brought to jail if she tried to save more than she could carry in her arms.  On another occasion, officers searched her, removed objects including a flashlight and a lighter from her pockets, and then destroyed those items.  The items she has had confiscated include court papers, her birth certificate, personal letters from her grandmother, blankets, food, and clothing.

10.     Plaintiff Robert Bell, Jr., is a homeless resident of the City of Pomona.  He has had nearly all of his belongings confiscated and destroyed by the

City of Pomona, without notice or an opportunity retrieve them.  Mr. Bell returned to Pomona after he was released from a two-week incarceration.  He went to check on his mother, who is also homeless, and to collect the possessions he had left in her care.  Shortly after he arrived in Pomona, Code Enforcement, City police, and sanitation workers rolled up and informed him and his mother that they could only keep what they could carry; the rest of their property would be thrown into a garbage truck.  He did not have sufficient time to sort through his belongings and save the most essential items.  Among other important possessions, he lost essential court papers, a cell phone, blankets, clothes, shoes, jewelry, toiletries, and tools to practice his trade as a barber.  The confiscation and destruction of his property stripped him of the items he needs to survive.  Further, the property destruction has jeopardized his ability to comply with his parole obligations because he must spend time replacing essential items such as clothing and blankets, which interferes with his ability to arrive on time to his parole meetings.  Also, he cannot leave Pomona without this parole officer's permission, but the City's confiscations place pressure on him to leave Pomona.

11.    Plaintiff Seth Croy is a homeless resident of the City of Pomona.  He suffers from depression, attention-deficit disorder, and hyperactivity disorder.  His property has been confiscated by City officials on three separate occasions without notice or an opportunity to retrieve his property.  On one occasion, he was ordered out from under his tarp in the pouring rain, and, despite the weather, the City confiscated all that he owned, including his tarp, blankets, clothing, food, albums containing photographs of his daughters, and his birth certificate.

12.    Plaintiff Veronica Delgado is a homeless resident of the City of Pomona who is diabetic and has high blood pressure.  On three separate occasions without notice or an opportunity for her to reclaim her possessions, City officials have seized and destroyed her property.  On one occasion, when Ms. Delgado asked a friend to watch over her belongings, the City confiscated everything she owned,

including her insulin, blood pressure medication, and prescription eyeglasses.  Ms. Delgado could not easily replace her medication and, as a result, experienced constant dizziness and vomiting.  On two other occasions, the City confiscated her California identification card and Social Security card, which delayed her ability to apply for employment and receive General Relief payments.  The City has also seized and destroyed her clothes, blankets, hygiene products, and other basic necessities.  Despite Ms. Delgado's best efforts to improve her life, the City's practices have "set her back" and put her in a position where she is "always trying to catch up."

13.     Plaintiff Jane Doe is a homeless resident of the City of Pomona.  Her property was seized and destroyed by City police officers without notice or an opportunity to reclaim her property.  City officials seized her HIV medication and her inhalers, which she has been unable to replace, leaving her health in jeopardy.  City officials also confiscated her clothes, food, and blankets, among other possessions.  She is afraid to seek work because she fears that her possessions will be confiscated again while she is away from them.  She is referred to under a pseudonym to avoid publicly revealing her HIV status.

14.     Plaintiff James Morgan is a resident of the City of Pomona.  He suffers from a number of serious mental disabilities, including schizophrenia and bipolar disorder.   He currently lives in transitional housing but will likely be back on the streets on April 5, 2016, when his housing program ends.  Mr. Morgan has had his property confiscated multiple times, including once in his presence and once when he had stepped away to use the restroom.  Among the property confiscated was his medication for his schizophrenia.  Being deprived of this medication caused him to hear voices and have severe anxiety attacks.  His California identification card and his Social Security card were also confiscated, which delayed his receipt of Social Security benefits.  He has also had his clothing, blankets, and medical paperwork confiscated, among other possessions.

15.     Plaintiff Carmen Nunez is a homeless resident of the City of Pomona.  She has had her belongings confiscated and destroyed by the City police, Code Enforcement officers, and sanitation workers on multiple occasions, left each time with little more than the clothes on her back.  Officers referred to both her and her belongings as "trash."  Officers seized and destroyed Ms. Nunez's tarp, bedding, and food recently purchased with food stamps, among other important possessions. Ms. Nunez's bicycle, her sole means of transportation, was also confiscated.  On one occasion, she pleaded with a City police officer not to throw away the ashes of her deceased mother, which she had been carrying with her for five years.  Despite her pleas and clear knowledge of the irreplaceable and sacred nature of the possession, the City police officer tossed Ms. Nunez's mother's remains into a dump truck, much to Ms. Nunez's horror and heart-break.

16.     Plaintiff Steven Wayne O'Donnell is a homeless resident of the City of Pomona.  During the course of 2015 and 2016, his property was confiscated on three separate occasions without notice or an opportunity to retrieve his property. On one occasion, Code Enforcement and police officers refused to allow Mr. O'Donnell  to pack and move his property, despite his request.  Instead, Mr. O'Donnell was arrested and, despite assurance from a police officer that his property would not be confiscated, his possessions were hauled into a dump truck and crushed with a trash compactor.  Upon his release from custody, Mr. O'Donnell did not have enough basic necessities to make it through a night on the streets.  The City has also confiscated Mr. O'Donnell's clothes, bedding, hygiene products, and other basic necessities.

17.     Plaintiff Robert Rico is a homeless resident of the City of Pomona. During 2015, he had his belongings confiscated in his presence by City police and Code Enforcement officers without notice or an opportunity to reclaim his property. The City seized and destroyed his food, personal identification, cellphone, and photos of his daughter when she was born, among other vital belongings.  Mr. Rico

-6-
COMPLAINT

1   also witnessed the City destroy his bicycle in its garbage truck.  Police officers told

2   him that if he tried to save his belongings, they would give him a ticket and take him

3   to jail.

4          18.     Plaintiff John Roe is a homeless resident of the City of Pomona who

5   suffers from post-traumatic stress disorder.  He has serious injuries to his back and

6   eye, and he takes pain pills for those conditions.  Mr. Roe also suffers from HIV,

7   which is symptomatic and requires medications to control.  City officials confiscated

8   his belongings in his presence without notice or opportunity to retrieve them.

9   Among those belongings were his pain medications and the HIV medication,

10  causing his symptoms to worsen.  Officers also confiscated his tent, clothes, blood-

11  pressure pump, medical records, and a cane.  He has been unable to replace his vital

12  medications for fear that if he leaves his property unattended, the City will again

13  confiscate it.  He is concerned about his physical condition from the lack of

14  medications and the effect of the stress on his blood pressure.  He is referred to

15  under a pseudonym to avoid publicly revealing his HIV status.

16         19.     Plaintiff Tommy Singleton is a homeless resident of the City of

17  Pomona.  City police officers confiscated his belongings in his presence after

18  providing him with less than ten minutes to gather his property.  He gathered as

19  much as he could, but officers still threw away many of his belongings, including

20  blood-pressure medication, pain medication, clothes, and blankets.  Although he told

21  the officers that he was watching over the property of a friend, the officers seized all

22  of that property as well.  Mr. Singleton was not provided an opportunity to retrieve

23  his property.

24         20.     Plaintiff James Spry is a homeless resident of the City of Pomona.

25  During 2015, he had his belongings confiscated by City officials on three separate

26  occasions, always without notice and with no opportunity to retrieve his property.

27  The property confiscated included his inhaler for his asthma and the tools he uses to

28  work as a handyman, along with bedding, food, and hygiene items.  In one case,

1  City officials threatened to confiscate all of his possessions unless he helped carry
2  most of his possessions to a dump truck.

3      21.      Plaintiff Kelley Wilcox is a homeless resident of the City of Pomona.
4  On three occasions, her property has been confiscated by City officials without
5  notice and without opportunity to retrieve her property, twice in her presence.  City
6  officials confiscated, among other things, food she had just purchased with food
7  stamps, her birth certificate, clothes, and a tent.  Most devastating, officials threw
8  her mother's ashes into a dump truck with a trash compactor.

9      22.      Plaintiff Julie Williams is a homeless resident of the City of Pomona.
10 Her property has been confiscated by City officials on three separate occasions
11 without notice or an opportunity to retrieve that property, twice in her presence.
12 Among the belongings confiscated were several blankets, photos of her
13 grandchildren, a tent, and her birth certificate.  She was told on at least one occasion
14 that, if she tried to take anything more than what she could carry, she would be
15 arrested.

16     23.      Plaintiff North Towne Christian Church is a Christian ministry
17 located in Pomona, California.  As part of its ministry, it provides a number of
18 services for homeless individuals in Pomona.  It provides meals to homeless persons
19 twice per week; serves as a food bank for homeless persons, collecting and
20 distributing food to homeless individuals; and serves as a blanket and clothing
21 distribution center.  The seizures and confiscations of homeless persons' property
22 have affected the church's operations in a number of ways.  First, the church has had
23 more homeless individuals attend its meal services, putting additional wear and tear
24 on the church's facilities.  Second, the church has had to seek additional donations
25 to keep up with increased demand for blankets and clothing from the homeless
26 community.  Third, the church's mission of tending to the spiritual needs of those
27 attending the church has been impaired because of the increased efforts that it has
28 been forced to expend in helping homeless individuals replace the property

confiscated by the City.  It has been forced to divert resources from other spiritual

programs to serve the increased physical needs of the City of Pomona's homeless

population.

Defendant:

24.     Defendant City of Pomona is a charter city and a municipal

corporation organized under the laws of the State of California.  The City is a legal

entity with the capacity to sue and be sued.  The departments of the City of Pomona

include the Pomona Police Department and the Pomona Department of Public

Works.  Members of both of these departments have repeatedly seized and

confiscated Plaintiffs' possessions.

# FACTUAL ALLEGATIONS

**a. Pomona's Homelessness Crisis**

25.     The County of Los Angeles recognizes that it is in the midst of a

"homeless crisis."[1]  Particularly in light of the El Niño weather pattern that has

threatened and continues to threaten significant storms this winter and spring, cities

in the County were encouraged to provide for their homeless population and, at a

minimum, take steps to assure that unsheltered people have tents, tarps, and clothing

to protect them from the rains and from hypothermia.[2]

26.     The City of Pomona, located within Los Angeles County, has not

been immune to that crisis.  Indeed, as of 2015, the City concluded that it has nearly

one thousand homeless residents, and nearly six hundred of those residents sleep on

the streets on a given night.

---

[1] County of Los Angeles Homeless Initiative, Draft Recommended Strategies to Combat Homelessness, at 1 (January 2016), *available at* http://goo.gl/TcoEZI.  The segment of the County's homeless population living in tents, makeshift shelters, and vehicles increased by 85% from 2013 to 2015.  *Id.*

[2] Inadequate El Niño Planning for County Homeless Population: An Interim Report by the 2015–2016 Los Angeles County Civil Grand Jury, at 1–2, *available at* http://goo.gl/d7iUKn.

27.     Rather than provide adequate shelter and homeless services, the City continues to take actions that make the homeless crisis dramatically worse.  Instead of taking substantive steps to address the real problem of homelessness in the City, the City instead, on information and belief, has targeted the homeless community with seizures of property.  Despite a significant shortage of emergency shelter and affordable housing, the City has made it extremely difficult for homeless service providers to set up shelters.

28.     Even more directly, instead of providing assistance to its homeless residents who are often subsisting on General Relief benefits, which are a maximum of $221 per month, on food stamps, or on no public benefits, the City seizes and destroys the little that they do have.  The City police, Code Enforcement officers (uniformed officials charged with enforcing the City's municipal code) and city sanitation workers carry out the confiscations.  On information and belief, the City uses these confiscations to push homeless people out of the City.  Indeed, the police have falsely assured homeless residents that police officers would leave them and their belongings alone if they moved to City's edge.

29.     Members of the City's homeless population are vulnerable to having their property confiscated because they are often forced to sleep on the street or in other outdoor locations.  Because they have no homes in which to store their belongings, they must either carry those belongings with them or keep them temporarily on City property.

**b. Pomona's Confiscation Practices**

30.     Despite *Lavan*'s clear admonition that "the government may not take property like a thief in the night," 693 F.3d at 1032, the City provides homeless persons no prior notice that it intends to confiscate and destroy their belongings. Police or Code Enforcement officers arrive on the scene and inform homeless individuals that their belongings will be confiscated immediately or within a few minutes.  The police, Code Enforcement, and sanitation workers often arrive with

1  trailers and dump trucks, ready to confiscate and demolish the homeless persons'
2  possessions on the spot.

3      31.    As was the case in *Lavan*, Plaintiffs have not abandoned the property
4  the City confiscates.  In fact, here, the property owner is frequently present and
5  objects to the confiscation.  At times, property owners, like the plaintiffs in *Lavan*,
6  have merely "stepped away from their personal property . . . to perform necessary
7  tasks such as showering, eating, using restrooms, or attending court."  693 F.3d at
8  1025.  Some Plaintiffs have temporarily left their property in order to use a
9  restroom, eat a warm meal at a charitable organization, or go to a pharmacy or a
10 doctor.  Even when they step away from their property, they routinely ask other
11 persons to watch over it, or they leave it in a neat and orderly pile, carefully covered
12 in a tarp and hidden away, to indicate that they will be back to retrieve it later.

13     32.    During the confiscations, officers will often tell homeless persons
14 that they can keep only what they can carry in their arms.  Sometimes, officers do
15 not even let them keep that much.  Even if the person has another means of
16 transporting the possessions, such as a bike with a basket, the police will deny that
17 person the opportunity to utilize it.  If homeless persons attempt to keep more
18 property than a City officer deems permissible, the officer threatens them with arrest
19 or citation.

20     33.    Given the lack of notice before confiscations, homeless individuals
21 often struggle to gather or carry away their property.  This leads to extremely
22 important items being destroyed, because the City fails to give homeless persons
23 enough time to pick out their most essential property.

24     34.    After police and Code Enforcement officers seize the property of
25 homeless persons, Code Enforcement typically loads some of that property into
26 pick-up trucks.  Sanitation workers throw the balance of the property directly into a
27 dump truck and crush it on the spot.  There is no opportunity whatsoever to retrieve
28 the property after confiscation.  When homeless persons ask how they can retrieve

their property, the police or Code Enforcement tell them it is not an option.  In one case, Plaintiff Kelly Ann Allen was told by an officer that she could "go to the landfill."  Another individual, William Kelly, did in fact go to the landfill to dig through mounds of trash in an attempt to find a backpack containing his half-completed application for Social Security Income benefits and the accompanying medical paperwork.  He was not able to recover it, and as a result, his benefits were delayed by several months.

**c. The Effect of the Property Confiscations**

35.      The property that the City of Pomona takes and destroys includes some of the most valuable possessions that any person could own.  For instance:

    a.    The City confiscated and never returned two Plaintiffs' HIV medications, leaving them at risk of increased symptoms.  The City also seized Plaintiff Tommy Singleton's blood-pressure medication, as well as his pain medication for a pinched nerve.

    b.    The City confiscated and never returned numerous Plaintiffs' EBT cards, which give them access to any General Relief funds and food stamps.

    c.    The City confiscated and never returned every Plaintiff's vital papers, including SSI applications and court papers.

    d.    The City took blankets and clothing from every Plaintiff.

    e.    The City trashed sacred possessions like the remains of the deceased mothers of Plaintiffs Carmen Nunez and Kelley Wilcox.

    f.    The City destroyed three Plaintiffs' precious family photographs of children and grandchildren.

    g.    Plaintiff James Spry works as a handyman and Plaintiff Robert Bell, Jr., works as a barber.  The City took their work tools,

1    leaving them unable to earn even the small amount of money that

2    they had previously made from such work.

3       h.    The City has destroyed bicycles owned by nearly all Plaintiffs.

4             Those bicycles are typically their only form of transportation.

5    36.    The possessions lost by Plaintiffs are all valuable.  Many of the

6    possessions, such as medications, food, tents, and blankets, are essential to the

7    health and welfare of their owners.  Others, such as identification and official

8    documents, are essential to obtaining government benefits and are difficult to

9    replace, particularly for people with, at best, a bike for transportation.  Plaintiffs are

10   also understandably hesitant to leave their remaining property in order to replace the

11   lost property for fear that it will be seized and destroyed if they leave for any period.

12   37.    Other possessions are priceless and irreplaceable because of their

13   sentimental value.  The loss of those possessions causes extreme emotional distress,

14   compounding the stress inherent in living on the streets and adding deep insult to the

15   severe injury of the confiscation of essential property.

16   38.    Even beyond the immediate harm of the loss of these possessions,

17   the property seizures have other devastating and longer-term effects.  First, such

18   seizures make it much more difficult for homeless persons to break out of the cycle

19   of homelessness.  After each seizure, instead of seeking housing or employment,

20   they must focus on recreating their lives: obtaining a new tent and blankets,

21   replacing lost medication, obtaining new copies of critical court papers, purchasing

22   new hygiene products, and finding a way to eat.  This reconstruction takes time—

23   from days to weeks or even months—and resources that many homeless people

24   simply do not have.  The process is hampered by homeless persons' fear of leaving

25   possessions unattended while they are attempting to replace their essential supplies

26   and documents.

27   39.    These confiscations also exact a mental toll on homeless persons.

28   They cause homeless individuals extreme anxiety because they must live in fear of

-13-
COMPLAINT

their most vital possessions being seized without notice. The confiscations are also demeaning and dehumanizing to homeless persons. Homeless individuals must watch their belongings being thrown away and destroyed before their eyes. As Plaintiff Kelly Ann Allen put it, "Having the police destroy all that you own is also an extremely humiliating and emotionally crushing experience." Plaintiffs Carmen Nunez and Kelley Wilcox remain emotionally traumatized from the loss of their mother's ashes at the hand of the City. The inherent humiliation of such confiscations is compounded by the disrespectful behavior of police and Code Enforcement officers. Plaintiff Seth Croy heard the officers laughing as they seized his property. Officials confiscating the property of Plaintiff Carmen Nunez referred to both her and her possessions as "trash."

40. The City's property confiscations are particularly egregious because homeless persons in Pomona often have no other choice but to sleep on the street. The City of Pomona has a 588 bed deficit with respect to sheltering its homeless population, and the City makes it extremely difficult for new homeless service providers to establish themselves. Further, even when shelter beds are available, they may be functionally inaccessible to homeless people. Many shelters place strict limits on how many personal possessions an individual can have, so, to stay in a shelter, an individual would need to risk losing her personal property—a very real risk in light of the City's intense confiscation scheme. Even when shelter beds are unoccupied and a person is willing to risk confiscation of their property, the beds are often "unavailable" for other reasons. For example, certain shelter beds are available only to seniors. Moreover, the City's winter shelter, the Armory, poses a serious risk to those who stay there given that it is highly contaminated with lead.

41. The seizure and destruction of property has a particularly damaging effect on mentally disabled homeless individuals. As the City well knows, many homeless individuals in Pomona suffer from mental disability. As such, the City is certainly aware that many of the individuals whose property it is destroying suffer

from mental disability.  Depriving mentally disabled individuals of their few belongings places them at substantially increased risk of deterioration and creates a suicide risk.  That is because a mentally disabled homeless persons' few belongings often provide an important anchor to reality and provide essential emotional support.

**d. Pomona's Criminalization of Homelessness Runs Contrary to the Practices Recommended by the Federal Government**

42.     The City also has a number of City Code provisions that reinforce its grim treatment of its homeless population.  Those provisions include:

- Section 46-603 of the City Code, which prohibits camping or using camping paraphernalia on public property, including public parks, streets, or sidewalks.  Pomona City Code, Article XII, Section 46-603.

- Section 46-604 of the City Code, which prohibits leaving or storing personal property on public property, which, again, includes public parks, streets, and sidewalks.  Pomona City Code, Article XII, Section 46-604.

- Section 46-605 of the City Code, which prohibits occupying vehicles for the purpose of living or sleeping in them, including any stay within a vehicle not directly related to driving the vehicle.  Pomona City Code, Article XII, Section 46-605.

- Section 46-606(1) of the City Code, which prohibits sleeping on public streets or sidewalks, and Section 46-606(2), which prohibits sleeping on the grounds of other improved city property.

43.     Violation of any of these code sections constitutes a misdemeanor.

44.     The City's treatment of its homeless population starkly contrasts with the best practices and recommendations provided by the United States government.  The United States Interagency Council on Homelessness ("USICH"), which has thoroughly examined this issue, has flatly condemned the sort of practices that the City has implemented.  The USICH has stated that law enforcement

measures targeting the homeless "do not solve the underlying causes of the problem" and often "actually exacerbate the problem by adding additional obstacles to overcoming homelessness."[3]  More bluntly, "[i]ndividuals experiencing homelessness need responses that go beyond criminalization."[4]

45. The USICH encourages municipalities to focus on providing housing for their homeless residents rather than criminalizing homelessness.[5]  The USICH has indicated that municipalities should focus on developing housing to accommodate their homeless populations, rather than wasting money on enforcement efforts that do nothing to help homeless individuals.[6]

## **GENERAL ALLEGATIONS**

46. The various seizures and confiscations of property discussed above were conducted, and each violation of Plaintiffs' rights occurred, pursuant to the policies, practices, and customs of the City, as executed by one or more of its employees or agents.

47. In committing each of the constitutional violations complained of herein, the City, and its officials, agents, and employees, were acting under color of law.

48. Plaintiffs are informed and believe and on such basis allege that at all times relevant to this action, each of the individuals who seized and destroyed their property were the agents, servants, or employees of the City and were acting at all times within the scope of their agency and employment and with the knowledge and consent of their principal and employer, the City.

---

[3] United States Interagency Council on Homelessness, Searching Out Solutions: Constructive Alternatives to the Criminalization of Homelessness, at 7 (2012), *available at* https://goo.gl/FxS7cv.
[4] *Id.* at 8.
[5] *Id.* at 3–4.
[6] *Id.* at 3–4, 8.

49.     Each Individual Plaintiff has filed a claim for damages with the City, pursuant to California Government Code § 910, *et. seq.*  Plaintiffs will amend this action once they have exhausted any applicable administrative remedies.

50.     Plaintiffs are informed and believe that the acts complained of herein were done in furtherance of the policies, practices, and customs of authorized policymakers of the City and were joined in and implemented by the City's agents and employees who seized and destroyed Plaintiffs' property.  The City and its agents and employees caused a violation of Plaintiffs' constitutional and statutory rights by, among other things, participating personally in the unlawful conduct; authorizing, acquiescing, or setting in motion the policies, plans, and actions that led to the unlawful conduct; failing to take action to prevent the unlawful conduct; demonstrating deliberate indifference to the need to maintain adequate training and supervision; and failing to take remedial and disciplinary action.

51.     The City's practice of seizing and destroying homeless individuals' property is so persistent and widespread that it constitutes a policy, practice, or custom of the City.  The seizure and confiscation of homeless individuals' property has been ongoing for a number of years and has occurred on numerous occasions. As such, constructive knowledge of that policy can be implied on the part of City policymakers.

## CLASS ALLEGATIONS

52.     Each of the Plaintiffs is a homeless or temporarily sheltered individual living in the City of Pomona.  They bring this action against the City both as individuals and as representatives of a class of all homeless individuals in Pomona who have had property seized and destroyed by the City and who face a continuing risk that their property will be seized and destroyed again.

53.     Plaintiffs bring this action pursuant to Federal Rule of Civil Procedure 23(b)(2) to certify a class of individuals who have had their property

1   seized and destroyed by the City and who are at risk of such seizure and

2   confiscation going forward. The class is defined as:

3           All homeless individuals residing in the City of Pomona
            whose personal belongings have been or are at risk of
4           being seized or confiscated by the agents and employees
            of the City without adequate notice or an opportunity to
5           retrieve the property.

6           54.     The members of the class are so numerous that joinder of all

7   members is impracticable. The class consists of approximately 600 homeless

8   persons who reside in the City of Pomona but who have no location at which to

9   store their property while they attend to the basics of life, including showering,

10  eating, and obtaining services at various government offices and private facilities.

11          55.     There are questions of law or fact common to the class, including:

12          a.      Whether the City has violated and continues to violate class

13                  members' state and federal constitutional rights against

14                  unreasonable seizures by implementing policies, practices, and

15                  conduct that result in the seizure and confiscation of homeless

16                  persons' personal property without adequate notice, an

17                  opportunity to have a meaningful pre- or post-deprivation

18                  hearing, or an opportunity to retrieve vital personal possessions

19                  before their seizure or destruction;

20          b.      Whether the City has violated and continues to violate class

21                  members' state and federal constitutional rights to due process

22                  by implementing the above-mentioned policies, practices, and

23                  conduct;

24          c.      Whether the City has violated and continues to violate class

25                  members' rights pursuant to California Civil Code sections 52

26                  and 52.1 by implementing the above-mentioned policies,

27                  practices, and conduct;

28

d.    Whether the City should be enjoined from seizing the unabandoned property of homeless individuals without adequate prior notice;

e.    Whether the City should be enjoined from immediately destroying the unabandoned property of homeless individuals in the City of Pomona.

56.    Plaintiffs' claims are typical of those of the class because the policies, practices, and conduct that have violated Plaintiffs' rights are the same as those that are applied generally to homeless individuals throughout the City of Pomona.  All Plaintiffs are members of the class that they seek to represent.

57.    The class representatives will fairly and adequately protect the interests of the class members and are unaware of any conflict among or between the class members that would preclude their fair and adequate representation.  Class counsel have the legal knowledge and resources to fairly and adequately represent the interests of all class members in this action.

58.    The City has acted on grounds generally applicable to the class, in that their policies, practices, and conduct have affected all homeless individuals throughout the City of Pomona.

**FIRST CAUSE OF ACTION**
**Protection from Unreasonable Seizures**
**42 U.S.C. § 1983, Fourth Amendment, and Article 1, § 13 of California Constitution**

59.    Plaintiffs re-allege and incorporate the allegations set forth in the foregoing paragraphs as though fully set forth herein.

60.    The City has violated Plaintiffs' Fourth Amendment rights to be free from unreasonable seizure of their property by seizing, confiscating, and destroying Plaintiffs' property without a warrant or sufficient justification.

61. The City's unlawful actions, through the conduct of its employees and agents, were done with the specific intent to deprive Plaintiffs of their constitutional rights to be secure in their property.

62. Plaintiffs are informed and believe that the actions of the City's employees and agents were intentional in failing to protect and preserve their property and that, at a minimum, the City was deliberately indifferent to the likely consequence that their property would be seized and destroyed unlawfully, based on the past circumstances of similar conduct.

63. As a direct and proximate consequence of the acts of the City's agents and employees, Plaintiffs have suffered and continue to suffer loss of their personal property and are entitled to compensatory damages for their property and other injury to their person.

## SECOND CAUSE OF ACTION
### Right to Due Process of Law: Procedural Due Process
### 42 U.S.C. § 1983, Fifth and Fourteenth Amendments, and Article 1, § 7 of the California Constitution

64. Plaintiffs re-allege and incorporate the allegations set forth in the foregoing paragraphs as though fully set forth herein.

65. The City owed Plaintiffs a duty, under the due process clause of the Fifth and Fourteenth Amendments to the U.S. Constitution and Article I, section 7 of the California Constitution, to provide Plaintiffs with due process before seizing and destroying their personal property.

66. Plaintiffs have a protected interest in their property. Further, many of the items that the City has seized and confiscated were of the utmost importance to Plaintiffs, as discussed above. By seizing and destroying Plaintiffs' property, the City permanently deprives them of their property and completely extinguishes their protected property interest.

67. The City provided Plaintiffs with no notice or insufficient notice that their property was at risk of being seized and confiscated. The City also did not

preserve the property or provide any means of reclaiming it.  The City seized and destroyed Plaintiffs' property even when Plaintiffs or other individuals objected to the seizure and indicated that the property was not abandoned.  And the City provided Plaintiffs no pre- or post-deprivation opportunity to contest the seizure and confiscation of their property.  The costs and burdens of additional process to protect Plaintiffs' property rights more adequately would be minimal.

68.    Plaintiffs are informed and believe that the acts of the City's employees and agents were intentional in failing to protect and preserve their property and that, at a minimum, the City was deliberately indifferent to the likelihood that the property would be seized and destroyed without due process based on the past occurrences of these same constitutional and statutory violations of the law.

69.    As a direct and proximate consequence of the acts of Defendant's agents and employees, Plaintiffs have suffered and continue to suffer loss of their personal property and are entitled to compensatory damages for their property and other injury to their person.

### THIRD CAUSE OF ACTION
#### Right to Due Process of Law: Danger Creation
**42 U.S.C. § 1983, Fifth and Fourteenth Amendments, and Article 1, § 7 of the California Constitution**

70.    Plaintiffs re-allege and incorporate the allegations set forth in the foregoing paragraphs as though fully set forth herein.

71.    The City, through the actions of its officers and employees, has engaged in affirmative conduct that has placed Plaintiffs in danger.  By seizing and destroying Plaintiffs' property—including medication, blankets, sleeping bags, clothing, food, and other essentials—the City places Plaintiffs' lives in danger. Plaintiffs live on the street and by seizing and destroying their property, the City exposes them to the elements and leaves them without essential medications,

1   sufficient food, and vital documents.  These actions violate Plaintiffs' rights to due

2   process as protected by the federal and state constitutions.

3        72.     As a direct and proximate consequence of the acts of the City's

4   agents and employees, Plaintiffs have been and will continued to be harmed and are

5   entitled to compensatory damages for their property and other injury to their person.

6   **FOURTH CAUSE OF ACTION**
**Right to Equal Protection**

7   **42 U.S.C. § 1983, Fourteenth Amendment, and Article I, § 7 of the California**
**Constitution**

8
9        73.     Plaintiffs re-allege and incorporate the allegations set forth in the

10  foregoing paragraphs as though fully set forth herein.

11       74.     The City, by disposing of Plaintiffs' belongings and preventing them

12  from attending to the daily necessities of life, has denied Plaintiffs equal protection

13  of the laws.  The City's policy of seizing and destroying homeless persons' property

14  without notice is designed and intended to target homeless persons.  And the

    enforcement of these policies and practices interferes with Plaintiffs' rights to travel
15
    freely, as guaranteed by the equal protection clause.
16
17       75.     As a direct and proximate consequence of the acts of the City's

18  agents and employees, Plaintiffs have suffered and continue to suffer loss of their

19  personal property and are entitled to compensatory damages for their property and

20  other injury to their person.

21  **FIFTH CAUSE OF ACTION**
**Violation of Civil Rights: Interference By Threat, Intimidation or Coercion**
**California Civil Code §§ 52, 52.1**

22
23       76.     Plaintiffs re-allege and incorporate the allegations set forth in the

24  foregoing paragraphs as though fully set forth herein.

25       77.     Defendant's agents and employees have used threats of arrest and

26  intimidation to interfere with Plaintiffs' rights to maintain their personal

27  possessions.  These threats have interfered with Plaintiffs' rights as secured by the

28  Fourth, Fifth, and Fourteenth Amendments of the United States Constitution, as well

as sections 7 and 13 of the California Constitution.  City officials have placed
Plaintiffs in fear of violence, arrest, or additional destruction of property if they
attempted to protect their constitutional rights.

78.     As a direct and proximate consequence of the acts of the City's
agents and employees, Plaintiffs have suffered and continue to suffer loss of their
personal property and are entitled to compensatory damages for their property and
other injury to their person.

79.     Plaintiffs are entitled to an injunction pursuant to California Civil
Code section 52.1 and to damages pursuant to Civil Code sections 52 and 52.1.  As
alleged above, Plaintiffs have filed administrative claims with the City for these
claims, and Plaintiffs will amend this action to include damages under this provision
once they have exhausted any applicable administrative remedies.

### SIXTH CAUSE OF ACTION
### California Civil Code § 2080 *et seq.*

80.     Plaintiffs re-allege and incorporate the allegations set forth in the
foregoing paragraphs as though fully set forth herein.

81.     The City's policies, practices, and conduct challenged herein have
violated California Civil Code § 2080 *et seq.*, in that the City's agents and
employees have failed to protect and preserve Plaintiffs' personal property by
seizing and confiscating it.  The City took the property from public sidewalks,
streets, and other public property; failed to provide notice that the property had been
taken; and failed to provide an opportunity for the owners of the property to reclaim
it within a reasonable time.  California Code of Civil Procedure § 2080, *et seq.*
imposes a mandatory duty to maintain property that is not abandoned once an
individual takes possession of it.

82.     As a direct and proximate consequence of the acts of the City's
agents and employees, Plaintiffs have suffered and continue to suffer loss of their

1  personal property and are entitled to compensatory damages for the loss of their
2  property and other injury to their person.

3                          **SEVENTH CAUSE OF ACTION**
                           **Conversion**

4       83.     Plaintiffs re-allege and incorporate the allegations set forth in the
5  foregoing paragraphs as though fully set forth herein.

6       84.     Plaintiffs were in possession of their personal property at the time
7  that the City's agents and employees seized and destroyed their property without
8  notice.  Plaintiffs were the owners of the property that the City seized and destroyed
9  and that property was not abandoned.  By seizing and destroying Plaintiffs'
10  property, the City intentionally and substantially interfered with Plaintiffs' interests
11  in that property.  They confiscated and refused to return such property, and in doing
12  so, wrongfully exercised control over it.  Plaintiffs did not consent to this treatment
13  of their property, and the permanent deprivation of their property caused them harm.
14  They had to re-acquire similar items and they faced hardship after their property was
15  destroyed.  The City and its agents and employees directly caused these
16  confiscations to occur.

17      85.     The City had no legitimate governmental interest that gave its agents
18  and employees the legal right or justification for confiscating Plaintiffs' property
19  without prior notice to Plaintiffs, without a procedure to recover their property, and
20  without fair compensation to Plaintiffs.

21      86.     As a direct and proximate consequence of the acts of Defendant's
22  agents and employees, Plaintiffs have and will suffer loss of their personal property
23  and are entitled to compensatory damages for their property and other injury to their
24  person.

25                          **EIGHTH CAUSE OF ACTION**
                           **Trespass to Chattels**
26

27      87.     Plaintiffs re-allege and incorporate the allegations set forth in the
28  foregoing paragraphs as though fully set forth herein.

88.     Plaintiffs owned various items of property that were intentionally confiscated by the City and its agents and employees, as shown by the City officers taking the property in a systematic manner.  The City did not have permission to seize and destroy Plaintiffs' property, and that Plaintiffs' property was not abandoned when it was seized and destroyed.  By seizing and destroying Plaintiffs' property, the City interfered with their use and possession of that property, and the City has harmed Plaintiffs by permanently depriving them of their property.

89.     As a direct and proximate consequence of the acts of Defendant's agents and employees, Plaintiffs have and will suffer loss of their personal property and are entitled to compensatory damages for their property and other injury to their person.

### INJUNCTIVE RELIEF

90.     Plaintiffs re-allege and incorporate the allegations set forth in the foregoing paragraphs as though fully set forth herein.

91.     A real and immediate dispute exists between Plaintiffs and Defendant regarding Plaintiffs' rights and Defendant's duty owed to Plaintiffs to protect Plaintiffs' personal property present on public property in Pomona. Defendant's policies and actions have resulted and will result in irreparable injury to Plaintiffs.  Plaintiffs claim that these acts are contrary to law and seek a declaration of their rights with regard to this controversy.

92.     There is no plain, adequate, or complete remedy at law to address the wrongs described herein.  Defendant has repeatedly engaged in the practice of confiscating the property of homeless individuals from the public streets and sidewalks without a warrant, without notice, and without a hearing.  Unless restrained by this Court, Defendant will continue to implement this policy and practice.

93.     Defendant's acts alleged above violate established constitutional and statutory rights of Plaintiffs, and Defendant could not reasonably have thought that

the conduct of its agents and employees in seizing and destroying Plaintiffs' property was lawful.

94.     As a direct and proximate consequence of the acts of Defendant's agents and employees, Plaintiffs have and will continue to suffer damages through injury to their person and the loss of their essential personal property, including bedding, clothing, medication, tents, personal papers, and other possessions.

**WHEREFORE,** Plaintiffs pray as follows:

1.     For a preliminary injunction and permanent injunction enjoining and restraining defendants from engaging in the policies, practices and conduct complained of herein;

2.     For an order certifying a class pursuant to F.R.Civ.P. 23(b)(2);

3.     For declaratory judgment that Defendant's policies, practices, and conduct as alleged herein violate Plaintiffs' rights under the United States and California constitutions and the laws of California;

4.     For damages in an amount to be determined according to proof but in no event less than $4,000 per incident pursuant to California Civil Code sections 52 and 52.l and to California Government Code section 815.6;

5.     For costs of suit and attorney fees as provided by law;

6.     For such other relief as the Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs demand trial by jury in this action of all issues so triable.

1   DATED:  March 18, 2016                    MUNGER, TOLLES & OLSON LLP

2                                                            BRADLEY S. PHILLIPS
3                                                            JOHN B. MAJOR

4
                                                     By:    _____
5                                                                   */s/ John B. Major*
6                                                            JOHN B. MAJOR
                                                     Attorneys for Plaintiffs
7
8                                                    PUBLIC COUNSEL
                                                            MARK ROSENBAUM
9                                                            GARY BLASI
10                                                           CHRISTINA GIORGIO
                                                             ALISA HARTZ
11                                                           AZADEH M. HOSSEINIAN

12
13                                                   By:    _____
                                                                   */s/ Mark Rosenbaum*
14                                                           MARK ROSENBAUM
                                                     Attorneys for Plaintiffs
15

16                                        **FILER'S ATTESTATION**
17
18              I, John B. Major, am the ECF user whose identification and password
19   are being used to file this COMPLAINT.  I hereby attest that the other above-named
20   signatories concur in this filing.

21

22

23

24

25

26

27

28